OPINION
{¶ 1} Defendant-appellant Perry L. Bell appeals from his conviction and resentencing in the Stark County Court of Common Pleas on one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04
(A)(B)(3), a felony of the third degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was convicted on one count of unlawful sexual conduct with a minor. This conviction arose from the following facts which were presented at a jury trial.[1] At about 11:30 p.m., on July 17, 2002, Catherine (Katie) Boggs, age fourteen, and her cousin Debra Ormiston, age sixteen, were walking home from a friend's house. Calvin (C.C.) Keller, an acquaintance of the girls, drove by with appellant and another man identified both as "B.J." and "J.B." The men stopped and asked the girls whether they wanted to go back to appellant's apartment to "drink and smoke." The girls briefly discussed the offer; Katie did not want to go, but Debra did. After some discussion, the girls got into the car with these men and went to an apartment. This apartment was identified as appellant's apartment.
 {¶ 3} Upon arriving at appellant's apartment, the group sat on the front porch. Eventually, the girls decided to explore the inside of the apartment. The interior of the apartment was dark and there was no furniture or electricity. The only items in the downstairs of the apartment were a fan, a radio, and several buckets.
 {¶ 4} Katie and Debra danced with C.C. and "B.J." on the first floor of the apartment for about fifteen to twenty minutes. Appellant stayed outside on the porch.
 {¶ 5} Subsequently, the girls decided to leave and began walking down the street. They had only gotten a short distance when Debra realized she did not have her purse. Appellant called after the girls that he had found Debra's purse so the girls returned to the house. As they came back to the apartment, C.C. was getting into his car to leave.
 {¶ 6} The girls went back inside the apartment. "B.J." asked Debra whether she wanted to go upstairs to drink and smoke. Debra noticed, however, that appellant pulled Katie aside to speak to her, and Katie had said "no." Debra asked Katie whether she minded being left on the first floor and Katie replied that she did not. Debra then went upstairs with "B.J."
 {¶ 7} Once they were alone downstairs, appellant unfastened Katie's pants, and she told him "No, I can't." Appellant responded "Yes, you can," as he led her into another room. Katie and appellant sat down on a blanket on the floor. Katie testified that appellant took her jeans and underwear off, and put his finger in her vagina. Appellant removed the rest of Katie's clothes, which included a purple starter jersey, a white T-shirt with a butterfly on it, and her bra. Appellant then put his penis in Katie's vagina. Katie testified that vaginal intercourse went on for twenty-five to thirty minutes and that appellant did not ejaculate, although he did "complete the sex act."
 {¶ 8} Debra who had been upstairs with "B.J." for forty-five minutes to an hour came downstairs. She saw appellant asleep on a blanket on the floor, and Katie lying beside him. Debra asked Katie whether she was ready to go. When Katie stood up, Debra noticed that she had no pants or underwear on. Katie collected her clothes but was unable to find the white T-shirt with the butterfly on it. She put on the starter jersey over her bra and the girls left the apartment. The time was between 2:00 and 3:00 o'clock in the morning.
 {¶ 9} As they were walking, the girls noticed a police cruiser pass them and double back. The girls were afraid because they knew they were out past curfew and began to walk in the opposite direction. The police picked the girls up and transported them to the Alliance Police Department.
 {¶ 10} Denise Boggs, Katie's mother, and Debra's father were contacted and arrived shortly. Denise Boggs was very angry. She noticed that Katie's white T-shirt was missing, but Katie claimed she had removed it because she was hot. Katie testified that she didn't tell anyone that night because she was afraid she would never be allowed to go back to Alliance. Katie testified that she did not tell Debra until about three days later what had happened. Debra testified Katie told her at the police department that night that she had been raped. Katie's mother did not become aware of the incident for approximately two weeks.
 {¶ 11} After Katie learned that her mother had found out about the incident from another source, Katie told her mother what had happened. Denise took Katie to the Alliance Police Department on July 29, 2002, where she spoke with Detective Greg Anderson and a social worker.
 {¶ 12} During a search of the apartment where the assault occurred, a blanket, sheet and wash cloth were found. Semen stains were found on the sheet, blanket and wash cloth. D.N.A. typing was performed on the blanket only. Appellant was identified as source of the semen.
 {¶ 13} On September 25, 2002, Detective Anderson, who happened to be working as a uniformed officer on that day, encountered the appellant at the scene of an unrelated matter. Detective Anderson approached appellant and told him that he needed to talk to him in reference to an incident with Katie Boggs. Detective Anderson testified that appellant threw up his hands and said something to the effect of "[t]hat bitch gave it up willingly." Detective Anderson asked appellant what he meant by the statement, and appellant explained Katie had willingly had sex with him and now he had heard on the street that she was claiming she was raped.
 {¶ 14} Detective Anderson spoke to the appellant again on October 29, 2002. At that time, appellant claimed that Detective Anderson misunderstood appellant's earlier statements. Appellant indicated that he was not referring to his own sexual intercourse with Katie Boggs but to the fact that C.C. and "B.J." both had intercourse with her.
 {¶ 15} Ultimately, the jury returned a guilty verdict. Prior to imposing sentence, the trial court classified appellant as a sexually oriented offender pursuant to appellant's stipulation to that status. On April 2, 2003, the trial court sentenced appellant to serve a definite term of two years in prison. The trial court ordered that this sentence was to be served consecutively to a prison term imposed in a separate criminal case.
 {¶ 16} Appellant appealed. This court affirmed appellant's conviction but reversed as to the consecutive nature of the sentence and remanded for re-sentencing, pursuant to State v. Comer, 99 Ohio St.3d 467,2003-Ohio-4165, 793 N.E.2d 473.[2]
 {¶ 17} Upon remand, appellant was re-sentenced at a sentencing hearing conducted on June 21, 2004. The trial court re-imposed a two year prison term to be served consecutively to the prison term imposed in a separate criminal case. In so doing, the trial court made various findings to support the imposition of the sentence. A corresponding sentencing entry was filed on June 25, 2004.
 {¶ 18} It is from this conviction and re-sentencing that appellant appeals, raising the following assignment of error:
 {¶ 19} "The trial court erred when it re-sentenced appellant to consecutive terms of incarceration and failed to make the requisite findings that would support the consecutive nature of the sentence."
 {¶ 20} In the sole assignment of error, appellant contends that the trial court erred when it re-sentenced appellant to consecutive terms of incarceration but failed to make the requisite findings that would support consecutive sentences. In appellant's arguments concerning the assignment of error, appellant also contends that the challenged findings are not supported by the record. We disagree.
 {¶ 21} Revised Code 2929.14(E)(4) concerns what a trial court must find to impose consecutive sentences. It provides as follows: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 22} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 23} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 24} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 25} In imposing consecutive sentences at a sentencing hearing, the trial court is required to orally make its findings and state its reasons on the record. See State v. Comer, 99 Ohio St.3d 467, 2003-Ohio-4165,793 N.E.2d 473.
 {¶ 26} Specifically, appellant asserts that the trial court failed to make a finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public," pursuant to R.C. 2929.14(E) (4), and failed to make a finding under R.C. 2929.14(E) (4) (a), (b), or (c). Further, appellant contends that the record does not support these two findings. As to the finding that consecutive sentences are not disproportionate to the seriousness of the conduct or to the danger that the he poses to the public, appellant argues that this case involved a technical violation of the law. Appellant points out that there were no weapons involved and no threats or use of force. Appellant further contends that this is not the worst form of the offense, as indicated by the state's agreement to classify appellant as merely a sexually oriented offender. Appellant also asserts that his criminal history does not rise to the level requiring consecutive sentences as this is appellant's first offense of this particular type.
 {¶ 27} However, a review of the record demonstrates that the trial court did make the required findings at the re-sentencing hearing. The trial court specifically held that "consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct or to the danger that the Defendant poses to the public", pursuant to R.C.2929.14(E)(4), and that the "[d]efendant's criminal history requires consecutive sentences," pursuant to R.C. 2929.14(E) (4) (c). Transcript of proceedings, pg. 12.
 {¶ 28} Further, a review of the facts of this crime demonstrates that the trial court's finding that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct or to the danger that the Defendant poses to the public is supported by the record. Appellant had sex with a 14 year old girl, after she said "no," causing obvious emotional distress. Appellant showed no remorse and, apparently, saw no harm in his actions. This attitude is reflected in appellant's comments at the resentencing: "I feel the sentencing, I mean I did time in penitentiary. I did ten years and I did, I came out, stayed clean for five years and wound up back in trouble and everything, and I feel that two years shouldn't be ran consecutively, and that's all the business I got to say." Transcript of Proceedings, pg. 10.
 {¶ 29} As to appellant's criminal history, the trial court stated as follows:
 {¶ 30} "In this particular case the Defendant was convicted in 1987 of breaking and entering, I should say in previous cases where he was required to serve a year and a half prison term in 1998. Defendant was convicted of two counts of aggravated robbery, and I believe there was an indefinite sentence imposed relative to those two counts, and that the Defendant, as Mr. Bell, you pointed out today, that you actually served a ten-year prison sentence relative to the, that conviction and then, of course, in 2002 you were convicted of four counts of trafficking in cocaine for which you were then given a 36-month prison term. "So the Court finds that without question that your criminal history requires consecutive sentences in this case . . ." Transcript of Proceedings, pgs. 12-13.
 {¶ 31} Upon review, we find that the record supports the trial court's finding that appellant's criminal history requires a consecutive sentence.
 {¶ 32} Accordingly, appellant's sole assignment of error is overruled.
 {¶ 33} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Hoffman, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] A more thorough statement of the facts involved can be found inState v. Perry L. Bell (Mar.22, 2004), Stark App. No. 2003CA00164.
[2] State v. Perry L. Bell (Mar. 22, 2004), Stark App. No. 2003CA00164.